## THE STATE v. WILLIAM H. HYER.

1. A woman who voluntarily takes a potion administered to her for the purpose of causing an abortion, is not an accomplice in the crime of the person administering it, the law making it no crime in her to take the potion.
2. Although the practice of courts is to advise juries not to convict a defendant on the uncorroborated testimony of an accomplice, yet a conviction founded on such evidence is strictly legal.

Error to Monmouth Sessions. On indictment for attempt to produce abortion.

Argued at June Term, 1877, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, VAN SYCKEL and KNAPP.

For the plaintiff in error, *George C. Beekman.*

For the state, *W. H. Conover, Jr.*

The opinion of the court was delivered by

KNAPP, J. Hyer, the plaintiff in error, was tried at the October Term, 1875, of the Monmouth Court of Sessions, upon an indictment against him for advising a pregnant woman to take, and administering to her, certain medicines, with intent to procure an abortion, upon which trial he was convicted.

Upon the trial of the indictment this woman was a principal witness for the state.

In giving the case to the jury, the court was requested by the defendant to charge them, "that if this witness *took* the medicine with intent to procure an abortion, she was an accomplice, or *particeps criminis,* and as such her evidence alone would not be sufficient for the jury to base a conviction on." The court refused so to charge, and exception was taken and sealed upon the refusal. Other exceptions were taken to the charge, but the court stopped the argument, except upon this point.

The question is whether there was error in the refusal to charge as requested.

A request to charge, embodying several propositions, is properly refused if any one of those propositions is untenable, or improperly asked for. *Beaver* v. *Taylor et al.,* 93 *U. S. Rep.* (3 *Otto*) 46, *and cases cited.*

In the request to charge, under consideration, there are contained two distinct propositions; one is, that if she voluntarily took the medicine which the defendant is charged with having advised her to take, she is an accomplice in his crime; and, second, if such accomplice, her testimony is not sufficient in law to convict, unless supported by corroborative proof. As to the first proposition, that she is an accomplice in the offence of which he is convicted, its correctness will be determined by considering whether, under the law upon which this indictment is framed, any criminality can attach to her by reason of her voluntarily yielding to his advice and taking the potion administered. The language of the enactment under which the indictment is framed is, "If any person, maliciously or without lawful justification, with intent to cause and procure the miscarriage of a woman then pregnant with child, shall administer to her, prescribe for her, or advise or direct her to take or swallow any poison, drug, medicine or noxious thing, such offender shall, on conviction thereof, be adjudged guilty of a misdemeanor, and be punished," &c. (*Rev., p.* 146, § 75.) This offence is entirely a statutory one; it consists in unlawfully administering, prescribing, advising or directing a pregnant woman to take some

drug or medicine with intent to cause her miscarriage. The taking of the drug or medicine is not, by the statute, made an offence in her, nor does it constitute an element in his crime. At the common law, an indictment for procuring an abortion would lie if the mother was quick with child; but the procuring of an abortion, or the attempt to do so by the mother herself, or by another with her consent, was not an indictable offence, so far as it affected her. This was decided in *State* v. *Cooper*, 2 *Zab.* 52. This enactment, almost immediately following the decision of the case last mentioned, was intended to remedy this defect in the law, and make the attempt, as against her, criminal. Chief Justice Green, in the case of *State* v. *Murphy*, 3 *Dutcher* 112, in speaking of the purpose of this statute, remarks that "it was not to prevent the crime of abortion so much as to guard the health and life of the mother against the consequences of such attempts. The guilt of the defendant is not graduated by the success or failure of the attempt; it is immaterial whether the *foetus* is destroyed or whether it is quickened or not; in either case the degree of the defendant's guilt is the same.    *    *    *
Nor does the statute make it criminal for the woman to swallow the potion. No act of hers is made criminal by the statute. Her guilt or innocence remains as at common law. Her offence, at the common law, is against the life of the child. The offence of the third person, under the statute, is mainly against her life and health. The statute regards her as the victim of crime, not as the criminal; as the object of protection rather than of punishment. The swallowing of the potion by her is not a crime. The third party who administers the potion, or who instigates its being taken, is the only offender recognized by the statute. Advising to take the potion is the overt act made criminal by the statute."

Upon the trial of an indictment against Robert Wood, under the Massachusetts statute, of which ours was probably intended to be a copy, the court was asked to instruct the jury that the pregnant woman, who was sworn as a witness in the cause, was so far an accomplice that the jury could not con-

vict the defendant on her uncorroborated testimony. This was refused by the court, and the jury were instructed that she was not, in law, an accomplice; and upon exceptions taken to this refusal and charge as given, the Supreme Court held that the jury were rightly instructed—that she was not, under the statute, an accomplice; and as to her, the practice of requiring corroborative proof did not apply, the statute creating no offence in her.

I think it clear that the relation of the witness to the offence charged, was not that of an accomplice in the defendant's crime, any more than the purchaser of liquor sold contrary to law, is an accomplice with the seller. However the particular circumstances connecting her with the transaction, may bear upon the credence to be given to her testimony by the jury, she was entitled to stand before the court as a witness unimpeached by any supposed complicity in the defendant's offence. This view of her position as a witness, must result in an affirmance of the judgment below, without looking at the soundness of the second branch of the request to charge. If not an accomplice within the intent of the law, the second part of the instructions asked for was an irrelevant proposition.

But if we look into the other question raised by the exception, I think it will appear that the request was wrong throughout. Although the judicial treatment of the evidence of accomplices is somewhat anomalous, yet it will be found that important points have been settled.

The legal competency of accomplices as witnesses is clearly established. Indeed, it is said to be the policy of the law to invite such persons to come forward and expose undiscovered participants in their guilt. *Jordaine* v. *Lashbrooke*, 7 *T. R.* 609. Yet, tainted as they are with confessed criminality, and testifying, as they often do, under the strong motive of hope of favor or pardon, it is but natural to withhold from them that faith in their testimony which we accord to the upright, disinterested, and innocent. It was reasonable that courts should regard their testimony with suspicion, and look care-

fully into the secret motives that might actuate bad minds to draw in and victimize the innocent; and, consequently, there has grown up in the courts a settled practice quite universal, and entitled in its observance almost to the reverence of law, to advise jurors, in the strongest cautionary terms, not to convict defendants on such testimony, unless they can find corroboration in the testimony of other and unsuspected witnesses, upon such material circumstances as tend directly to establish the guilt of the accused. And quite frequently do the courts, in their discretion, direct juries to acquit and set aside verdicts founded on the testimony of uncorroborated accomplices. But I think it may be asserted as the law that, when the jury acting upon such testimony, he being a legal witness, find a verdict of guilty, it is a lawful verdict, and cannot be disturbed on error.

It would be illogical to place all accomplices, or accomplices in every character of crime, upon the same footing. Evidently the nature of the crime of which he acknowledges himself to be guilty, must vary the weight that a jury will accord to his testimony; the reasonableness of his story, and his manner of testifying, must be considerations affecting his credibility, and tending to shape the advice of the judge. If the offence be one free from moral turpitude, the story told reasonable, the manner of its relation evincive of truthfulness, the jury might, even under the influence of the strongest caution, feel bound in conscience to believe it, and convict. To deny to a conviction, under such circumstances, legal support, would be to take from the jury the right of judgment upon the weight of testimony of legally competent witnesses —a right within their province—and to compel them to find against their convictions of its truth.

The wise practice of courts to admonish jurors against too great reliance on the evidence of *particeps criminis*, found much support in the circumstance that the mouth of the accused was closed against the accusations of his criminality, while the self-convicted criminal was allowed to speak. The admission of persons accused of crime, as witnesses in their own

behalf, has removed this one ground for disfavoring such testimony. But while cogent reasons still exist for scrutiny and distrust of evidence from such impure sources, I have not fallen in with any case condemning a conviction founded on the uncorroborated testimony of an accomplice as illegal. On the other hand, I find cases of high authority in support of such conviction.

. In the well-known case of *Atwood & Robbins,* 1 *Leach C. C.* 464, tried before Justice Buller, for robbery from the person, the only evidence to identify the prisoners and connect them with the robbery, was the testimony of an accomplice, testifying that the defendants, with himself, constituted the three persons who committed the crime; the case was given to the jury, and a verdict of guilty had. The propriety of this verdict was referred to the twelve judges of England, who, by a unanimous vote, pronounced it to be legal. And in the subsquent case of *Rex* v. *Durham,* 1 *Leach C. C.* 478, Baron Perryn, one of the judges who sat in the Atwood & Robbins case, permitted the case to go to the jury upon the sole evidence of an alleged accomplice, stating that the twelve judges who sat in the Atwood & Robbins case were unanimously of opinion that the practice of rejecting an unsupported accomplice, was rather a matter of discretion with the court than a rule of law. Lord Ellenborough, in the case of *Rex* v. *Jones,* 2 *Camp.* 131, remarks that "No one can seriously doubt that a conviction is legal, though it proceed on the evidence of an accomplice. Judges, in their discretion, will advise a jury not to believe an accomplice, unless confirmed."

Alderson, B., in *Rex* v. *Wilkes,* 7 *C. & P.* 272, in summing up to the jury, says : "You may legally convict on the evidence of an accomplice only, if you can safely rely on his testimony, but I advise jurors never to act on the evidence of an accomplice only, unless he is confirmed as to the particular person charged with the offence." The same language substantially was used by Lord Abinger, C. B., in directing the jury in *Reg.* v. *Farler,* 8 *C. & P.* 106. In the case of *Reg.* v. *Stubbs,*

33 *E. L. & Eq. R.* 552, at the trial before the Durham Sessions, corroboration of the testimony of an accomplice as to the connection of the prisoner with the offence was wanting, and the chairman instructed the jury that corroboration as to each prisoner was not necessary. The correctness of this direction was reserved for the judgment of the Court of Criminal Appeal, and it was unanimously decided by that court that it had no power to interfere. Chief Justice Jarvis says : " It is not a rule of law that accomplices must be confirmed, in order to render a conviction valid, but it is usual in practice for the judge to advise the jury not to convict on such testimony alone, and jurors generally attend to the judge's direction, and require confirmation, but it is only a rule of practice." Park, B., and Justices Wightman, Creswell, and Willes expressed themselves to the same effect ; the latter remarking : " This is not a question of law, but of practice ; and questions of law only can be reserved for our opinion." A number of cases to the same effect will be found collected in 1 *Phillip's Evidence*, (10th *Eng. ed.*,) ch. 6, § 2, note 1. Further reference to them is unnecessary.

It will be found, on examination, that the rule in this country is the same. In 1 *Whart. Crim. Law.*, § 783, the author states that the preponderance of authority, in this country is, that a jury may convict a prisoner on the testimony of an accomplice alone, though the court may, at its discretion, advise them to acquit unless such testimony is corroborated on material points. And in the note in the sixth edition, a number of American cases are cited in support of the statement in the text. These cases recognize the same practice in our courts, to caution and advise juries against conviction upon such testimony alone. The corroboration which they are directed to look for, must be upon matters material to the guilt of the accused, not as to the fact of the crime, merely, but upon matters which connect the prisoner with the crime committed, and the number of accomplices testifying has no effect to dispense with or lessen the need of supporting proof. Such proof must come from sources un-

tainted by the particular crime. They will show, further, that this is a practice, merely—one, it is true, of high obligation on courts to observe—and that it is not a rule of law. If this be the state of the law, then the defendant was not entitled to the instruction asked for, had the witness been, in the law, *particeps criminis*. The instruction requested was, that as matter of law, a conviction based on the testimony of an accomplice, could not be supported. This instruction was not his right.

It is extremely unlikely that, in the interests of justice, any judge, in a proper case, would neglect, much less refuse, to give, on request, such caution to the jury, as the circumstances of the case required; but if he should—it being a matter of discretion with him—errors could not be assigned on the refusal.

No error appears in the record and judgment, and there should be affirmance.