THE STATE, DEFENDANT IN ERROR, v. JERRY ROSA,
PLAINTIFF IN ERROR.

Argued June 30 and July 1, 1904—Decided October 7, 1904.

1. The fact that a witness, when testifying on a former occasion
respecting the same interview to which his evidence is now
directed, omitted to mention an important incident which he now
narrates, may be shown for the purpose of affecting his credi-
bility, notwithstanding any explanation which he may give for
the discrepancy, and a judicial instruction to the jury to disre-
gard the discrepancy because of the explanation is erroneous.
2. The fact that a witness for the state, who testifies to circum-
stances tending to convict the defendant, knows that he himself
is officially accused of the crime for which the defendant is being
tried, may be shown by the defendant for the purpose of affecting
the credibility of the witness.

On error to the Bergen Oyer and Terminer.

For the state, *Ernest Koester*, prosecutor of the pleas.

For the defendant, *Peter W. Stagg.*

The opinion of the court was delivered by

Dixon, J. On the night of February 28th, 1904, two
Italians, known by the names Demetrio and Benedetto, were
shot and killed in Lodi, Bergen county. At the last April
term of the Bergen Oyer the defendant, Rosa, was convicted
of murder in the first degree for the killing of Demetrio. At
the trial the testimony produced on behalf of the state tended
to prove that about six o'clock in the evening of February
28th some quarrelsome words had passed between the de-
fendant and Benedetto in the house where Benedetto and
Demetrio boarded; that between eight and nine o'clock the
defendant and another Italian, known as Frank, had called
at the same house, inquiring for Demetrio and Benedetto,
but had not found them; and that between nine and ten
o'clock the defendant and Frank were in the defendant's

boarding-house, where the defendant was declaring his pur-
pose to go out and find the other two men while Frank was
remonstrating with him.    The shooting took place about
eleven o'clock, near Demetrio's boarding-house.

An important witness to the scene between Frank and the
defendant at the latter's boarding-house was Umberto For-
norucci, and on direct examination for the state he testified
that the defendant then asked Frank, "Have you got a"
[holding his hand in the position of a man grasping a re-
volver and moving the forefinger as if pulling the trigger],
to which Frank replied, "No, I don't have anything."    This
question, thus put by word and gesture, was, of course, very
significant respecting the intention of the defendant, but was
not observed by either of the two other witnesses who were
present at the time.

The record shows that before the trial now under review
the defendant had been on trial for murder, presumably
for the murder of Benedetto, and the witness Umberto, on
his present cross-examination, testified that he was a witness
on the previous trial, but then *forgot to tell* about this motion
of the defendant's finger, adding, in response to a question
put by the court, that he was not questioned about it.    In
charging the jury on this subject the learned justice in-
structed them as follows: "It is needless to say that his omis-
sion to mention this circumstance when testifying on a former
occasion, no question having been asked that would elicit the
information, ought not to be considered as affecting his credi-
bility."

The defendant having caused the entire record of the pro-
ceedings to be returned with his writ of error, pursuant to
section 136 of the Criminal Procedure act (*Pamph. L.* 1898,
*p.* 866), complains of the foregoing instruction as having
done him manifest wrong and injury.    We think this com-
plaint is well founded.

The mere fact that the witness said he was not questioned
about the occurrence should not preclude the jury from con-
sidering whether his failure to mention it affected his credi-

bility. The circumstances of the case render it probable that this same scene was the subject of his former examination, and his declaration that when previously testifying he forgot to tell about it implies that there was a proper opportunity for telling it if it had been present in his mind. That such an occurrence, appealing as it would both to the eye and to the ear and so significant of a mischievous purpose, was absent from his recollection under the conditions suggested, certainly deserved the consideration of the jury when deciding whether his testimony alone was adequate proof of its reality.

This misdirection in the charge prejudiced the defendant in maintaining his defence on the merits and under the statute requires us to order a new trial.

One of the state's witnesses, named Conti, testified that while in the jail where the defendant was confined he overheard the latter telling two other prisoners that he, the defendant, had shot Benedetto and Demetrio. On cross-examination of this witness by Mr. Stagg, the defendant's counsel, the record presents the following:

"*Q.* You were arrested at the same time that Jerry was arrested, were you not, on this charge?

"The Court—What has that got to do with it, Mr. Stagg?

"Mr. Stagg—The question was asked in the other case.

"The Court—A charge of crime does not affect the credibility of the witness. There is no law for it and no common sense for it; the fact that he has been accused of crime does not affect his credibility.

"Mr. Stagg—He is charged with the same crime, and it seems to me that it affects his credibility.

"The Court—You might accuse him of this crime, but that does not affect his credibility in any proper sense and ought not be taken into consideration in showing how he came to be in jail.

"To which ruling of the court the defendant's counsel prays an exception, * * *· and it is sealed accordingly."

We think this exception was well taken. It appears by the record that Conti was confined in the county jail for some undisclosed reason from the day after the shooting until his examination at this trial, and if in answering the question above quoted he had admitted that he had been arrested on a charge of the very crime for which the defendant was being tried, a motive might have been found for his fabrication of testimony to convict the defendant and thus to exonerate himself. While, of course, a mere charge of crime, disconnected with the subject under investigation, does not affect the credibility of a witness, the fact that a witness knows himself to be officially accused of the crime which his evidence tends to fasten upon another person cannot be overlooked in considering whether he is free from every influence that might lead to falsehood. The conviction of this defendant for a murder perpetrated by a single shot would be likely to end all search for the murderer, while his acquittal might revive and stimulate investigation of other suspected persons, and the defendant had the legal right to put in evidence the grounds on which it could be argued before the jury that this thought in the mind of the witness impaired his credibility.

This reason for allowing the question was sufficiently, although in general terms, presented by counsel, and its exclusion was injurious to the defendant upon the merits of the case.

Without adverting to other objections urged against the conviction, we conclude that on the grounds above stated the judgment should be reversed and a new trial ordered.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, DIXON, FORT, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY. 9.