28 N.J. Super. 381 (1953)
100 A.2d 766
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
LOUIS SPRUILL, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 14, 1953.
Decided November 16, 1953.
*383 Before Judges CLAPP, GOLDMANN and EWART.
Mr. George R. Sommer argued the cause for appellant.
Mr. David H. Harris, Special Deputy Attorney-General, argued the cause for respondent (Mr. Theodore D. Parsons, Attorney-General, attorney; Mr. Albert M. Ash, Deputy Attorney-General, of counsel).
The opinion of the court was delivered by GOLDMANN, J.A.D.
Defendant Spruill, a patrolman attached to the Rutherford Police Department, was indicted for nonfeasance in office in that he unlawfully and willfully neglected and omitted to perform the duties enjoined upon him by law, specifically, failing to suppress a disorderly house at No. 256 Union Avenue, Rutherford, wherein bookmaking was carried on contrary to law. The jury found him guilty, and he was sentenced to imprisonment for 1 1/2 to 3 years, and fined $1,000. Defendant appeals.
The State's evidence tended to show that defendant, while a member of the Rutherford Police Department, induced Joseph Bobrowski, a fellow member, to allow the latter's home to be used for the taking of bets on horse races. Defendant first broached the subject of making "easy money" to Bobrowski by allowing his home and telephone to be used for bookmaking, in March 1948. Bobrowski was to receive $50 a week, the telephone bill to be paid for by the users. After several conversations defendant brought one Lombardi to the Bobrowski home late in March and, in the presence of Mrs. Bobrowski, an agreement was reached for the use of the house and the telephone. The following day Lombardi brought two men to the house and they began to take bets by phone. A few days later defendant brought one Bologna, an electrician, to the house where, at defendant's request, he installed a telephone extension with a knife switch in the *384 basement. Defendant thereafter made the agreed $50 payments in cash to the Bobrowskis. The bookmaking operations continued for about four weeks until the latter part of April 1948, when they were discontinued upon notice to defendant.
The State produced as witnesses Bobrowski, his wife, Bologna, and employees of the telephone company. On cross-examination defendant's attorney showed that both Bobrowski and Bologna had been indicted for false swearing before the Bergen County grand jury in connection with its investigation into this bookmaking operation; that Bobrowski had pleaded not guilty and the charge was still pending; and that Bologna had pleaded non vult but had not yet been sentenced. Bobrowski testified that he hoped to get some consideration when his case was disposed of, as a reward for his testimony. Bologna indicated that he, too, was hopeful of receiving leniency as a result of his testimony. Defendant denied any connection whatsoever with the entire transaction. He produced seven character witnesses.
There was plenary proof which the jury could readily find credible, and did find credible as indicated by its verdict, that not only did defendant fail to suppress the bookmaking operations which he knew were being carried on at the Bobrowski home, but actively aided and participated in installing the entire operation.
Defendant's first point is that the trial court erred in refusing to charge the jury as requested. Counsel for defendant submitted 26 separate requests to charge, all of which were denied by the court "except as covered in the main charge." Counsel then excepted to that part of the charge in which the court defined and referred to character evidence, and to the court's refusal to charge the requests, particularly Nos. 19 and 20. In his brief defendant abandons all requests except the following, which he alleges were not covered in the charge:
"19. The evidence shows that the witness Joseph Bobrowski is under indictment and that his case has not yet been disposed of, and that the witness Joseph Bologna has pleaded guilty and has not *385 yet been sentenced. You should take these facts into consideration in determining the weight you give to their testimony for it is possible that the testimony of one or both of them may have been influenced by strong hope of favor or pardon.
20. You should carefully weigh and scrutinize the testimony of Bobrowski and Bologna and should carefully consider the extent to which such testimony has been corroborated by other witnesses on the subject.

* * * * * * * *
24. Several of the witnesses produced by the State have admitted their criminality and therefore you have a right to find that their testimony may be colored by the fact that they hope to receive favor or pardon for testifying in the manner in which they have testified.
25. In determining the weight which you shall give to the testimony of a witness who has admitted his own criminality you should carefully scrutinize all of the testimony and try and find whether or not his testimony has been corroborated by other credible testimony."
At the time of the trial Rule 1:2-19 (a), now R.R. 1:5-1(a), provided that error in the charge of the court, or in the refusal to charge as requested by defendant, shall be cause for reversal "if specific objection thereto was made and it appears from the entire record of the proceedings had upon the trial that the defendant thereby suffered manifest wrong or injury." And Rule 2:7-8(b), now R.R. 3:7-7(b), provided that no party may urge as error any portion of the charge or omissions therefrom unless he objects thereto before the jury retires to consider its verdict, "stating distinctly the matter to which he objects and the grounds for his objection." Under these rules, not only must timely objection be made, but specific objection, distinctly stating the matter objected to and the grounds for the objection, and it must be shown that defendant suffered manifest wrong or injury by the court's failure to charge as requested.
The trial court, after stating the law as to the presumption of innocence, the burden of proof, and the definition of reasonable doubt, charged the jury:
"As sole judges of the facts, you are to determine the credibility of the witnesses. In determining whether or not a witness is worthy of belief, and therefore credible, you may take into consideration the appearance and the demeanor of the witness, the *386 manner in which he or she may have testified, their interest in the outcome of the trial, and you may also consider which is the more reasonable, the more logical, and the more probable story. * * *"
No specific objection was made to the court's refusal to charge requests Nos. 24 and 25, as required by Rule 1:2-19(a), now R.R. 1:5-1(a). Defendant did not thereby suffer manifest wrong or injury, and we find no plain error affecting his substantial rights.
We turn to a consideration of requests Nos. 19 and 20. Defendant's argument is that the participation of Bobrowski and Bologna "in the basic crime places them in the same category as accomplices and their testimony falls under the rules applicable to the testimony of accomplices." This being so, the jury should have been instructed, as requested, that the testimony of these two witnesses for the State should be closely scrutinized, citing State v. Hogan, 13 N.J. Misc. 117 (Sup. Ct. 1935), and State v. Edelman, 19 N.J. Super. 350 (App. Div. 1952).
We will assume, for the moment, that Bobrowski and Bologna were in the category of accomplices. Request No. 19 was in effect a warning to the jury that the testimony of these witnesses may have been influenced by a strong hope that the prosecuting authorities would grant them favorable treatment, and request No. 20 was a warning that their testimony should be carefully scrutinized, considering, in particular, the extent of the corroboration. See State v. Edelman, 19 N.J. Super. 350, 353-354 (App. Div. 1952). Such charges are discretionary with the court. Although the practice is quite universal for the court to advise jurors not to convict defendants on the testimony of accomplices unless they can find corroboration in the testimony of other and unsuspected witnesses upon such material circumstances as tend directly to establish the guilt of the accused (State v. Hyer, 39 N.J.L. 598, 602 (Sup. Ct. 1877); State v. Edelman, above), failure so to charge is not reversible error. State v. Hyer, 39 N.J.L. at page 605; State v. Bove, 98 N.J.L. 350, 356 (Sup. Ct. 1922), affirmed per curiam 98 N.J.L. 576 (E. & A. 1923). Cf. State v. Gaddis, 131 *387 N.J.L. 44, 46 (Sup. Ct. 1943). Anything to the contrary in State v. Sandt, 95 N.J.L. 49 (Sup. Ct. 1920), was overruled by State v. Bove. Such a charge is not a rule of law, but merely a counsel of caution given by the judge to the jury. Omission of the caution is not a ground for a new trial, being solely a matter lying in the trial court's discretion. Cf. Wigmore on Evidence (3rd ed. 1940), § 2056, p. 312 et. seq., 2 Wharton on Criminal Evidence (11th ed. 1935), § 730, p. 1225 et seq.
The two cases cited by defendant are not here pertinent. In State v. Hogan prejudicial error was committed by the trial court in overruling questions propounded to the State's witnesses, self-confessed accomplices, designed to show their partiality and bias inspired by motives of self-protection. The case did not involve a denial of a request of the sort here involved. In State v. Edelman, defendant's conviction for conspiracy was reversed because the trial court ignored the fact that the State's witness, without whose testimony the State had no case, was an accomplice in the conspiracy, and charged the jury that his testimony was to be accorded "just as much value as the testimony of any other witness." This was held error.
Bobrowski and Bologna were not, however, accomplices. Defendant was indicted for nonfeasance in office in failing to perform his duty as a policeman, and not for bookmaking. Bobrowski and Bologna had not been indicted for making book, which defendant refers to as the "basic crime"; rather, each had been charged with swearing falsely before the grand jury on their original appearance before that body when they sought to conceal the truth as to their and defendant's knowledge of and participation in the bookmaking operations. Notwithstanding the necessity of proving that such operations were conducted at the time and place laid in the indictment, it is clear that defendant's indictment for nonfeasance was entirely separate and distinct from the false swearing indictment returned against the State's witnesses. They cannot be considered as defendant's accomplices in his failure to perform the duties enjoined upon him by law.
*388 By the great weight of authority the test for determining if one is an accomplice of the accused is whether or not he could be indicted and punished for the crime with which the accused is charged. One who could not be convicted of the crime with which the accused is charged is not an accomplice, regardless of how culpable his conduct may have been. Commonwealth v. Hopkins, 165 Pa. Super. 561, 69 A.2d 428, 430 (Super. Ct. 1949); 2 Wharton on Criminal Evidence (11th ed. 1935), § 732, p. 1229 et seq.; 22 C.J.S., Criminal Law, § 784, page 1334; 14 Am. Jur., Criminal Law, § 110, p. 840. Cf. State v. Hyer, 39 N.J.L. 598 (Sup. Ct. 1877); State v. Fisher, 94 N.J.L. 12 (Sup. Ct. 1920), reversed on other grounds, 95 N.J.L. 419 (E. & A. 1921); State v. Martin, 74 Ariz. 145, 245 P.2d 411 (Sup. Ct. 1952); Black v. Commonwealth, 250 Ky. 547, 63 S.W.2d 598 (Ct. App. 1933); State v. Davie, Utah, 240 P.2d 263 (Sup. Ct. 1952); Downing v. United States, 35 F.2d 454 (C.C.A. 9 1929).
No objection is made to the trial court's charge as rendered, but to its failure to charge in the language requested. Bobrowski and Bologna were not charged with being co-conspirators or accomplices. They were not in any special category which required the court to instruct the jury specifically as to how it should consider or treat their testimony. That they in anywise contributed to or participated in the illegal activity charged does not make them accomplices in defendant's nonfeasance.
We find the charge as rendered was fully adequate and proper under the circumstances. In concluding whether or not the charge correctly instructed the jury, it must be read as a whole. State v. Janiec, 11 N.J. 397, 401 (1953). To the extent that a subject is adequately covered in the charge, there is no error in failing to repeat merely because it is embodied in a request. State v. Goodman, 9 N.J. 569, 588-589 (1952). The trial court need not charge in the exact language requested, and defendant has no right to choose the language in which the court should state the pertinent instructions, provided the subject matter of the *389 request has been correctly and fully covered. State v. Grillo, 11 N.J. 173, 185 (1952); State v. Morriggi, 15 N.J. Super. 479, 483 (App. Div. 1951).
We conclude that the failure to charge as requested was not erroneous or prejudicial, and an examination of the entire charge discloses that the trial judge fairly and accurately instructed the jury as to the applicable law.
The second point made by defendant on this appeal arises in connection with the verdict. As first announced, the verdict was: "The jury finds the defendant guilty as charged, but the jury recommends clemency, sir." The judge then informed the jury that such recommendation was not binding upon the court. He proceeded to mold the verdict to one of guilty as charged and then had the jury polled. On the poll, ten jurors found defendant guilty and two not guilty. Thereupon the court said:
"Under the circumstances, the court feels that possibly you should deliberate further. I thought I had made it clear in my charge that your verdict would necessarily have to be unanimous. Apparently that was not understood. But in a matter such as this, we can only accept an unanimous verdict. I will ask you to please go back and continue your deliberations."
Forty minutes later the jury returned with a verdict of guilty as charged, and on the jury being polled it was found that this verdict was unanimous.
Defendant contends that the trial court committed prejudicial error by sending the jury back to reconsider its verdict after it had been polled. Rule 2:7-9 (a), now R.R. 3:7-9 (a), expressly provides that in criminal cases the verdict shall be unanimous and shall be returned by the jury to the judge in open court. Section (d) of the same rule provides:
"When a verdict is returned and before it is recorded the jury shall be polled at the request of any party or upon the court's own motion. If, upon the poll, there is not unanimous concurrence, the jury may be directed to retire for further deliberations or may be discharged."
*390 Defendant does not complain of the manner in which the jury was polled, or contend the verdict of guilty as finally rendered was improper, but that the court, upon disclosure of lack of unanimity on the first poll, having two alternatives under Rule 2:7-9(d) (now R.R. 3:7-9(d)), should have elected to discharge the jury rather than directed it to retire for further deliberations. The substance of the argument is that the court as a result of the poll not only knew how the jury was divided but the opinion of each juror, and so "should have adopted the lesser of the two evils and accepted the disagreement reported * * * instead of compelling them to continue their deliberations."
Defendant cites no New Jersey cases in support of this argument. Burton v. United States, 196 U.S. 283, 25 S.Ct. 243, 49 L.Ed. 482 (1904), relied upon by defendant, was a case where the trial court polled a jury which it knew was in disagreement, and then sent the jury back for further deliberations. The United States Supreme Court disapproved the practice. Here, however, the jury was in apparent agreement, and the trial judge quite properly polled the jury under the cited rule.
Defendant also cites Kramer v. Kister, 187 Pa. 227, 40 A. 1008, 44 L.R.A. 432 (Sup. Ct. 1898), and Commonwealth v. Zierenberg, 133 Pa. Super. 112, 1 A.2d 918 (Super. Ct. 1938). These cases are not in point. The Pennsylvania practice, unlike ours, seems to be that where the hour is late, the jury may hand up a sealed verdict, separate for the night, and reassemble in the morning to present its sealed verdict to the court. If the jury is then polled and a dissent appears, the court must grant a mistrial. Obviously, a dissent on the following morning after an apparently unanimous sealed verdict the previous evening gives rise to the suspicion of jury tampering.
The record discloses no objection made on behalf of defendant to the trial court's action in directing the jury to retire for further deliberation. Objection thereto was entered for the first time on this appeal. Cf. State v. Picciotti, 12 N.J. 205, 211 (1953). Rule 1:2-19(a), now *391 R.R. 1:5-1(a), already referred, provides that in review on criminal appeals error in the denial by the court of any matter resting in discretion shall be cause for reversal only if specific objection thereto was made and it appears from the entire record of the trial proceedings that defendant thereby suffered manifest wrong or injury. No showing is made that defendant suffered such manifest wrong or injury, nor do we perceive any. There is nothing whatsoever to indicate that the court in anywise abused its discretion.
There is no merit in defendant's further statement that the action of the trial court in directing further deliberation by the jury was "tantamount to coercion." Cf. State v. Overton, 85 N.J.L. 287, 295-296 (E. & A. 1913). Upon retiring to further deliberate its verdict, the jury here was wholly free to determine the issue, and still had the choice of returning a verdict of guilty or not guilty, or of announcing that it was in disagreement. Coercion of a jury is not permissible in any degree under our constitutional system of judicial administration. In re Stern, 11 N.J. 584, 588 (1953). But here there was no statement by the trial judge which could in any way be deemed coercive, nor did the jury, after again retiring, reach an unanimous verdict so quickly as to preclude the inference of renewed deliberation.
Affirmed.