STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
LOUIS SPRUILL, DEFENDANT-APPELLANT.

Argued June 14, 1954—Decided June 28, 1954.

74

*Mr. George R. Sommer* argued the cause for appellant.

*Mr. Harold Kolovsky* argued the cause for the State (*Mr. David H. Harris*, Special Deputy Attorney-General, and *Mr. David M. Satz, Jr.*, Deputy Attorney-General, on the brief).

The opinion of the court was delivered by

HEHER, J. Defendant was convicted in the Law Division of the Superior Court upon an indictment charging that he was guilty of criminal nonfeasance in that he did "continuously, unlawfully and wilfully" fail, neglect and omit, contrary to his public duty as a duly appointed patrol-

man of the Rutherford Police Department, to suppress a disorderly house maintained on or about the first day of April 1948, and thereafter, at No. 256 Union Avenue, in the Borough of Rutherford, for gaming "by means of book-making on horses," in violation of law, and to bring about the prosecution of the offenders against the law, but, "on the contrary, then and there unlawfully did suffer gambling in the manner and form aforesaid," a common-law offense denounced by *R. S.* 2:103–1.

The accused interposed timely requests, four in number, for instructions to the jury that the testimony of the State's witnesses Bobrowski and Bologna be carefully weighed and scrutinized to determine whether in the particular circumstances, of which more hereafter, it was "influenced by strong hope of favor or pardon," and also to "consider the extent to which such testimony has been corroborated by other witnesses on the subject." In the Appellate Division counsel treated these witnesses as "in the same category as accomplices"; and the "rules applicable to the testimony of accomplices" were invoked. But the holding there was that the point was untenable for want of a "specific objection" to the refusal to charge as requested, "distinctly stating the matter objected to and the grounds for the objection," in accordance with what was deemed a requirement of *Rule* 1:2–19(*a*), now *R. R.* 1:5–1(*a*), and *Rule* 2:7–8(*b*), now *R. R.* 3:7–7(*b*), and, moreover, assuming these witnesses "were in the category of accomplices," the omission to charge the requests warning that their testimony "may have been influenced by a strong hope" of "favorable treatment" at the hands of the prosecuting authorities, and so should be given careful scrutiny, "considering, in particular, the extent of the corroboration," although such refusal was not the usual course, "is not a ground for a new trial, being solely a matter lying in the trial court's discretion"; and, in any event, the witnesses were not "accomplices in defendant's nonfeasance," and the jury had been "fairly and accurately instructed" as to the "applicable law," and the failure to

charge as requested "was not erroneous or prejudicial." 28 *N. J. Super.* 381 (1953).

The case is here by certification at the instance of the accused.

The State called Bobrowski, his wife, Anna, and Bologna as witnesses, and from them adduced evidence tending to show this situation of fact: In March 1948, when they were fellow patrolmen in the Rutherford police department, the accused persuaded Bobrowski, as a means of gaining "easy money," to allow the use of his residence and home telephone facilities for bookmaking on horse races, in consideration of a weekly payment of $50, the telephone bill to be paid by the bookmakers. When Bobrowski indicated interest in the proposal, the accused brought one Lombardi to Bobrowski's home, and the result was an agreement, made in the presence of Bobrowski's wife, for the use of their residence and telephone for the prosecution of the criminal enterprise. The next day Lombardi and two others began operations on Bobrowski's premises. A day or two later, at the instance of the accused, Bologna, an electrician, and the accused's next door neighbor, installed a telephone extension in the basement of Bobrowski's residence by means of a "knife switch" on the telephone line, for the use of the "sitters," and for four weeks thereafter bookmaking was carried on there and the stipulated weekly price of $50 was paid to Bobrowski by the accused. But later on Bologna made a sworn categorical denial to the Bergen County grand jury of his part in the transaction; and he was indicted for false swearing, pleaded *nolo contendere,* and was awaiting sentence at the time of giving testimony in the case now before us. He conceded that he was hopeful of leniency as a result of his testimony in support of the State's case. Bobrowski also denied his complicity before the grand jury; and he, too, was indicted for false swearing, and was then awaiting trial on a plea of not guilty. But he also admitted that he hoped to receive favorable consideration as a reward for his testimony against the accused.

 It is settled law in New Jersey that a jury may convict a prisoner upon the testimony of an accomplice alone, if, in their judgment, it is entirely credible and worthy of belief. But the testimony of an accomplice is given close scrutiny. Accomplices, tainted as they are with confessed criminality, are often influenced in their testimony by the strong motive of hope of favor or pardon; and so it is incumbent upon the courts to "look carefully into the secret motives that might actuate bad minds to draw in and victimize the innocent." *State v. Hogan*, 13 *N. J. Misc.* 117 (*Sup. Ct.* 1935), affirmed 115 *N. J. L.* 531 (*E. & A.* 1935). The fact that co-conspirators have turned "State's evidence" naturally affects "injuriously the credit to be given to their testimony"; for it is "suggestive, at least, of a bargain between them and the state authorities with relation to the punishment which would be inflicted upon them in case their testimony aided in bringing about" the conviction of the accused. *State v. Black*, 97 *N. J. L.* 361 (*Sup. Ct.* 1922).

██ The basic question is one of interest. Interest is no longer a disqualification; but it is a circumstance that may be used to impeach the witness. The interest of a party or a witness in the event of the cause is a factor to be considered in assessing his credibility. At common law a witness was rendered incompetent to testify by reason of interest in the outcome of the action; and, while the incompetency has been removed, the bias that such interest would occasion is still to be reckoned with in determining the probative force of the testimony. Every fact or circumstance tending to show the jury the witness' relation to the case or the parties is admissible to the end of determining the weight to be given to his evidence. *Trinity County Lumber Co. v. Denham*, 88 *Tex.* 203, 30 *S. W.* 856 (*Sup. Ct.* 1895); *Wigmore on Evidence* (3d ed.), sections 526, 966.

It bears against a witness' credibility that he is an "accomplice in the crime charged" and testifies for the prosecution; and the *"pendency of any indictment* against the witness indicates indirectly a similar possibility of his currying favor

by testifying for the State"; so, too, the "existence of a *promise* or just expectation of pardon for his share as accomplice in the crime charged"; and when the co-indictee testifies for the accused, "his situation here also may be considered as tempting him to exonerate the other accused and thus help towards his own freedom." *Wigmore, section* 967. Compare *State v. Rosa*, 71 *N. J. L.* 316 (*E. & A.* 1904); *Alford v. United States*, 282 *U. S.* 687, 75 *L. Ed.* 624, 51 *S. Ct.* 218 (1931).

When the accomplice's common-law testimonial disqualification was finally removed, the question arose as to the sufficiency of the testimony when received, and out of this there came, in the late 1700's, a recognition of the need for insuring qualitative sufficiency, taking the form of a practice to discourage a conviction founded solely on the testimony of an accomplice uncorroborated. *R. v. Smith and Davis*, 1 *Leach Cr. L.* (*4th ed.*) 479 (1784). But in England this practice did not become a rule of law until modern times. It was recognized constantly that the judge's instruction in this regard was a mere exercise of his common-law function of advising the jury upon the weight of the evidence, and was not a statement of a rule of law binding upon the jury. *Wigmore, section* 2056. In a case there cited, Buller, J., said:

"I thought it proper to refer your case to the consideration of the twelve Judges. My doubt was whether the evidence of an accomplice, unconfirmed by any other evidence that could materially affect the case, was sufficient to warrant a conviction. And the judges are unanimously of opinion that an accomplice alone is a competent witness, and that if the jury, weighing the probability of his testimony, think him worthy of belief, a conviction supported by such testimony alone is perfectly legal. The distinction between the competency and credit of a witness has long been settled. If a question be made respecting his competency, the decision of that question is the exclusive province of the judge; but if the ground of objection go to his credit only, his testimony must be received and left to the jury, under such directions and observations from the Court as the circumstances of the case may require, to say whether they think it sufficiently credible to guide their decision in the case." *R. v. Atwood and Robbins*, 1 *Leach Cr. L.* (*4th ed.*) 464 (1788).

In *R. v. Mullins*, 7 *State Tr. n. s.* 1110, 3 *Cox Cr.* 526 (1848), Maule, J., held

"* * * there is no rule of law at all that an accomplice cannot be believed unless he is confirmed. * * * It is an observation addressed, not to the Court to exclude the evidence, but addressed to the jury who have to weigh the evidence, and it is for them to say whether the confirmation will satisfy them or whether they will be satisfied without any. * * * The directions of judges given to juries in that respect are not directions in point of law which juries are bound to adopt, but observations respecting the facts, which judges are very properly in the habit of giving, because, with respect to matters of fact, the judge as well as the counsel upon both sides endeavor to assist the jury." And see *R. v. Feigenbaum* [1919] 1 *K. B.* 431, to the same effect.

Thus, at common law the practice of discouraging a conviction resting solely on the uncorroborated testimony of an accomplice was not a rule of evidence, but a "counsel of caution" given by the judge to the jury, in recognition of the danger of proceeding to an adverse judgment on such evidence alone.

But, while there is support for the doctrine that in the application of this rule the trial judge's omission of the caution was not of itself a ground for a new trial, being a matter solely in the trial judge's discretion, *Wigmore, Section* 2056, we are clear that there cannot be an arbitrary refusal to instruct the jury in specific terms that the evidence of an accomplice is to be carefully scrutinized and assessed in the context of his special interest in the proceeding.

Here, Bobrowski was a confessed conspirator to obstruct justice and defeat the operation of the State's anti-gaming laws, directly and by defaulting in the performance of his duty as a police officer. And the jury could find that Bologna was a knowing participant in the conspiracy; certainly his plea of *non vult* to the indictment for false swearing reveals an interest bearing directly on his credibility. It is not requisite that conspirators know each other, or that

they should all join in the common purpose at the same time. *State v. Lennon*, 3 *N. J.* 337 (1949).

 Generally, the judge is bound to comply with requests for instructions that correctly state the controlling legal principles in relation to the evidence, and concern the material issues and points of the case. A requested instruction is to be judged by "its practical application to the facts of the case in hand and not by its abstract inerrancy." *State v. Rombolo*, 91 *N. J. L.* 560 (*E. & A.* 1918), Garrison, J.

 The requested instruction involving the scrutiny to be given the testimony adduced by the State from the accomplices related to a crucial point of the case—*i. e.*, the principles governing the weighing of evidence taken from those in *particeps criminis*; and, if there be a measure of discretion in some circumstances, there is no basis here in reason and justice for the refusal of the requests. Legal discretion does not mean arbitrary action, but judgment reasonably exercised according to the particular circumstances. having in view the gravity of the issue. The instructions given did not cover the specific point, and were not otherwise adequate in this regard. Evidence of the complicity of the witnesses and their resultant involvement in criminal proceedings of their own was admissible as bearing upon interest affecting their credibility; and it is of the essence of a fair trial that the significance of such testimony be made known to the jury for an understanding discharge of their function to assess the evidence.

 The objection to the refusal to charge the requests was adequate. The policy of the cited rules of court, *R. R.* 1:5–1(*a*), 3:7–7(*b*), is the avoidance of error by the timely specification of the ground of the exception; and the objection itself was notice that the accused remained insistent that the particular requests embodied sound and pertinent instructions not substantially covered by the charge given.

The judgment of conviction is reversed, and a new trial is awarded.

82

VANDERBILT, C. J. (dissenting). I disagree with the majority of the court. In effect they are overruling, without mentioning it, *State v. Bove*, 98 *N. J. L.* 350 (*Sup. Ct.* 1922), affirmed *per curiam*, 98 *N. J. L.* 576 (*E. & A.* 1923). In that case the defendant appealed to our former Supreme Court from a judgment of conviction of the crime of selling lottery tickets. Among other things he argued that the trial court erred in refusing to charge certain requests to the effect that the testimony of the defendant's accomplices should be viewed with the closest scrutiny and also in refusing a request to charge that there could be no conviction without corroboration of the accomplices' testimony. Mr. Justice Parker in his opinion for a unanimous court disposed of both contentions saying:

"The answer to this is that the charging of such requests is discretionary with the court. *State v. Hyer*, 39 *N. J. L.* 598. And as to the legal necessity of corroboration, the rue is that it is not legally necessary, and has been so decided in a number of cases, many of them recent."

I fail to see any reason for overruling this holding that such a charge as to the testimony of accomplices rests in the discretion of the trial judge.

. The promise of immunity does not invariably destroy the truthfulness of a witness' testimony:

"The promise of immunity, then, being the essential element of distrust, but not being invariably made, no invariable rule should be fixed as though it had been made. Moreover, if made, its influence must vary infinitely with the nature of the charge and the personality of the accomplice. Finally, credibility is a matter of elusive variety, and it is impossible and anachronistic to determine in advance that, with or without promise, a given man's story must be distrusted." 7 *Wigmore on Evidence* (3rd ed.) § 2057.

Here, moreover, on cross examination both witnesses admitted that they were hopeful of leniency for testifying on behalf of the State. The trial judge charged the jury as to the credibility of witnesses:

"Now, Ladies and Gentlemen, with questions of fact, the weight of the evidence, the credibility you will give to any witness sworn in the case, the inferences that you will draw from the proof, and the conclusions that you will ultimately draw from the proof, the Court has nothing to do. These are matters entirely within your province, which you, as jurors, must determine for yourselves. As sole judges of the facts, you are to determine the credibility of the witnesses. In determining whether or not a witness is worthy of belief, and therefore credible, you may take into consideration the appearance and the demeanor of the witness, the manner in which he or she may have testified, their interest in the outcome of the trial, and you may also consider which is the more reasonable, the more logical, and the more probable story."

Obviously the jury was aware of the possibility that the testimony of the accomplices might be unreliable and that its duty as the trier of the facts was to evaluate their testimony in this light.

I can see no reversible error and accordingly I would affirm the judgment below.

I am authorized to say that OLIPHANT and JACOBS, JJ., join in this dissent.

*For reversal*—Justices HEHER, WACHENFELD, BURLING and BRENNAN—4.

*For affirmance*—Chief Justice VANDERBILT, and Justices OLIPHANT and JACOBS—3.