32 N.J. Super. 1 (1954)
107 A.2d 674
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CHARLES ENGELS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 21, 1954.
Decided August 24, 1954.
*4 Before Judges JAYNE, STANTON and HALL.
Mr. Julius E. Kramer argued the cause for appellant (Messrs. Chandless, Weller & Kramer, attorneys).
Mr. Joseph A. Murphy, Assistant Deputy Attorney-General, argued the cause for respondent (Mr. Grover C. Richman, Jr., Attorney General of New Jersey).
The opinion of the court was delivered by JAYNE, S.J.A.D.
The defendant was convicted on the first count of an indictment embracing four counts which accused him of willfully false swearing in a judicial proceeding. N.J.S. 2A:131-4, et seq. The propriety of the procedure eventuating in the judgment of conviction is presented to us for appellate consideration.
Initially we examine the indictment. In each of the four counts it is alleged that on the date therein specified the defendant appeared as a witness before the grand jury of the County of Bergen and took an oath administered to him *5 by the foreman of the jury that the testimony he would give would be the whole truth and nothing but the truth.
The following summary of the successive counts is sufficiently informational:
1. That on June 6, 1951 he "did wilfully swear under oath in substance and effect that he was not a partner of Arthur Bakofen, also known as Artie Baker, which statement the said Charles Engels * * * then and there well knew was false."
2. That on June 6, 1951 he "did wilfully swear under oath in substance and effect that he never paid a sitter or telephone home owner to use a telephone for bookmaking purposes."
3. That on May 31, 1951 he "did wilfully swear under oath in substance and effect that he was not a partner of Arthur Bakofen * * * in the bookmaking business."
4. That on March 24, 1953 he "did wilfully swear under oath in substance and effect that he was not a partner of Arthur Bakofen * * * in the bookmaking business."
At the trial the third count of the indictment was dismissed by the court. The jury acquitted the defendant of the allegations of the second and fourth counts and found him guilty of the false swearing charged in the first count.
The reason predominantly emphasized by counsel for the defendant to require a reversal of the conviction is that the first count of the indictment under which the defendant was found guilty fails to allege a crime. Particularly does counsel for the defendant draw our attention to the vital allegation of the count which reads: "* * * the said Charles Engles, also known as `Junie' Engles, being so sworn as aforesaid, did wilfully swear under oath in substance and effect that he was not a partner of Arthur Bakofen, also known as Artie Baker, which statement the said Charles Engles, also known as `Junie' Engles, then and there well knew was false * * *."
We then consult the language of the statute:
"Any person who willfully swears falsely in any judicial proceeding or before any person authorized by any law of this state to administer an oath and acting within his authority, is guilty of false swearing and punishable as for a misdemeanor."
Broadly stated, the insistence of counsel for the defendant is that the allegation in the count here impugned, when *6 segregated from the other counts, noticeably fails to inform the defendant of the nature and cause of the accusation as constitutionally required and is legally deficient by reason of its vagueness and uncertainty. Motions were made at the trial on behalf of the defendant inter alia to dismiss this count of the indictment, and such were denied.
It is not inappropriate preliminarily to comment that during recent decades our courts, executives and legislatures have been watching with apprehensiveness, perhaps anxiety, the rising tide of crime. With a firm adherence to our traditionally basic and fundamental principles, our procedural methodology necessarily continues in the process of rational and more pragmatical readaptation. Especially is this manifest in relation to the elimination of technical and artistic objections to the literal composition of indictments.
Gradually our courts have recognized that the nicety of language, the former precautious tautology and prolixity which had characterized indictments in the environment existing in the days of the early common law could with substituted safeguards be disregarded in the social experiences of the modern day without any infringement of the right of the accused adequately to be informed of "the nature and cause of the accusation." Vide, State v. Lefante, 12 N.J. 505 (1953).
Assuredly, it is still absolutely imperative that an indictment allege every essential element of the crime sought to be charged. State v. Schmid, 57 N.J.L. 625 (Sup. Ct. 1895); State v. Solomon, 97 N.J.L. 252 (E. & A. 1922); State v. Bleichner, 11 N.J. Super. 542 (App. Div. 1951); State v. Lombardo, 20 N.J. Super. 317 (App. Div. 1952); State v. Algor, 26 N.J. Super. 527 (App. Div. 1953); State v. Quatro, 31 N.J. Super. 51 (App. Div. 1954). Positive also it is that the omission of the allegation of an essential element of the crime cannot be supplied by inference or implication. State v. DeVita, 6 N.J. Super. 344 (App. Div. 1950); State v. Lustig, 13 N.J. Super. 149 (App. Div. 1951).
*7 In the present case the point of criticism centers upon the use of the unelucidated word "partner" in the count here implicated. The count itself explains: "a partner of Arthur Bakofen." True, it does not expressly specify the particular activity in which the alliance existed as do the third and fourth counts of the indictment, to wit, "in the bookmaking business."
But the legislative and judicial attitude toward the concise composition of indictments has become more liberal and the discretionary disinclination to quash them for vagueness and uncertainty has been manifest unless their palpable deficiency is obviously prejudicial to the defendant in the preparation and presentation of his defense. Proctor v. State, 55 N.J.L. 472 (Sup. Ct. 1893); State v. Sweeten, 83 N.J.L. 364 (Sup. Ct. 1912); State v. Davidson, 116 N.J.L. 325 (Sup. Ct. 1936); State v. Ellenstein, 121 N.J.L. 304, 327 (Sup. Ct. 1938); State v. Micone, 134 N.J.L. 177 (Sup. Ct. 1946); State v. Russo, 6 N.J. Super. 250, 254 (App. Div. 1950), certification denied 4 N.J. 456 (1950); State v. Winne, 12 N.J. 152, 181 (1953); State v. Witte, 13 N.J. 598 (1953). An indictment is not regarded as insufficient for the lack of the allegation of any matter not necessary to be proved. Vide, State v. Zimmer, 121 N.J.L. 265 (Sup. Ct. 1938); State v. Borelli, 27 N.J. Super. 223 (County Ct. 1953).
It must be realized that supplementary information, reasonably relevant and explanatory of the accusation, may now be obtained by a request for a bill of particulars. R.R. 3:4-6. Noticeably the defendant in the present case did not invoke that privilege. Was he in doubt concerning the import of the accusation? Experience has disclosed that very few, if any, of those accused of crime now go to trial in ignorance of the specific accusation against them.
It seems to us that in its practical aspect the contextual association of the four counts of the indictment fully apprised the defendant that he was being accused of falsifying his denial of a participation with Arthur Bakofen in the illicit practice of bookmaking.
*8 However, we shall confine our consideration to the sufficiency of the allegations apparent on the face of the first count. Initially it must be comprehended that the statutory offense of false swearing does not possess the several technical elements of the crime of perjury. State v. Kowalczyk, 3 N.J. 51 (1949); State v. Eisenstein, 16 N.J. Super. 8, 13 (App. Div. 1951), affirmed 9 N.J. 347 (1952). Vide, also, State v. Ellenstein, 121 N.J.L. 304, 324 (Sup. Ct. 1938). The indictment for false swearing under observation in Joseph L. Sigretto & Sons, Inc. v. State, 127 N.J.L. 578 (Sup. Ct. 1942), was evidently drawn in the language of the statute and its validity sustained.
Here the word "partner" was embodied in the question propounded to the defendant at the session of the grand jury. We quote:
"Q. Junie, the last time you were here you said you didn't want to testify because there some outstanding charges against you? [sic] A. That's right.
Q. You now have entered a plea of guilty or non vult to all those charges? A. That's right.
Q. Since you have been in and entered that plea I want to ask you, you were a partner of Artie Baker in the arranging of telephone business? A. No, I wasn't.
Q. You weren't? A. No.

* * * * * * * *
Q. You weren't his partner at all? A. No.

* * * * * * * *
Q. You weren't a partner of Artie Baker? A. No.
Q. In any way? A. No way except what I said about arranging those phones for him.

* * * * * * * *
Q. You weren't a partner of his in this operation? A. No."
Noticeably and indeed significantly the count of the indictment reproduces in the same language the question propounded to the defendant which it is alleged he willfully answered falsely.
Hypothetically it would seem that had the defendant been asked if he was a "tenant" of Arthur Bakofen and the subsequent indictment charging him with willfully answering the question falsely omitted a designation of the premises, the same criticisms could be asserted. In either instance *9 the core of the question concerns the existence vel non of the stated relationship. In reviewing the validity of indictments, essentialities are distinguishable from details.
The defendant had been previously indicted and convicted as a co-conspirator of Arthur Bakofen in the making of book upon the racing of horses. Can it be rationally supposed that he was ignorant of the particular in which he was accused of testifying falsely? We think not. Courts cannot wisely overlook the practicalities of the situation in the exercise of their discretionary power to dismiss indictments for vagueness and uncertainty. R.R. 1:5-1; R.R. 2:5 admonish us that no judgment of conviction upon an indictment shall be reversed for any imperfection, omission, defect or lack of form or for any error except such as shall have prejudiced the defendant in maintaining his defense upon the merits.
Like the trial judge we are not impressed by the argument that there cannot be such an individual as a partner, that is, "a sharing participant," in an unlawful activity.
Nor are we persuaded that the questions in which the word "partner" was used elicited only the expression of a conclusion, an opinion. Even if so, it has been held that a statement of belief or opinion known by the witness to be false and deliberately and willfully made under oath, to mislead the court or jury, constitutes the offense of false swearing. Cf. State v. Sullivan, 25 N.J. Super. 484, 490 (App. Div. 1953), certification denied 13 N.J. 289 (1953), certiorari denied 347 U.S. 903, 74 S.Ct. 428, 98 L.Ed. ___ (1954); 41 Am. Jur. § 2, p. 4, § 6, p. 6.
We are, however, of the persuasion that in the circumstances of the present case both the question propounded to the defendant and his answer thereto related to a matter of fact within the personal knowledge of the defendant. Cf. State v. Kaufman, 31 N.J. Super. 225 (App. Div. 1954). The opportunity of the defendant to explain at the trial the denial of his relationship in that respect with Bakofen in conformity with his intended meaning when testifying before the grand jury was available to the defendant in the presentation of his defense. Obviously from an examination of the record, he *10 chose to pursue at his trial that avenue of immunity. Cf. State v. Toscano, 13 N.J. 418 (1953). We therefore conclude that the trial judge did not commit a palpable error in the exercise of judicial discretion in denying the motions to dismiss the first count of the indictment.
Our survey of the transcript of the testimony given by the defendant before the grand jury projects, we think, the more problematical question whether the defendant did not "in substance and effect" acknowledge, rather than deny, that he was a partner, a co-participant, of Arthur Bakofen in the conducting of the unlawful bookmaking by his explanation that he solicited from telephone subscribers the use of their telephones by the bookmaking agents engaged by Bakofen.
There was testimony at the trial that in his capacity as one of three partners and principals including Bakofen, the defendant received an equal one-third share of the net monetary gain currently derived from the illicit pursuit of bookmaking. Assuredly in such a capacity he was a partner of Bakofen within the common acceptation of the import of the word. That pattern of participation with Bakofen in the unlawful undertaking the defendant expressly denied in his interrogation before the grand jury.
We must resolve that in the existing state of the evidence and in recognition of the three counts of the indictment then existing, the determination of the issue whether the defendant willfully testified falsely concerning his relationship with Bakofen as a partner was appropriately submitted to the jury.
But in examining the verdict it is significantly noticeable that the jury acquitted the defendant of the allegations of the second count in which he was accused of falsely denying that he "paid a sitter or telephone home owner to use a telephone for bookmaking purposes," and likewise acquitted him of the allegations of the fourth count in which he was charged with falsely swearing that he was not a partner of Arthur Bakofen "in the bookmaking business."
We fail to discover any evidence or suggestion at the trial by any one that the defendant was associated with Bakofen in a relationship analogous to that of a partner in any activity *11 other than bookmaking. The acutely discriminative finding of the jury that the defendant was innocent of the offenses alleged in the second and fourth counts and guilty of that charged in the first count is quite enigmatical.
The trial judge defined the meaning of the word "partner" to be "one who has a part in anything with another or others; a partaker * * * a sharer; a participant * * *." Had he purposefully restricted and accommodated the definition adaptably to the circumstances of the case, a possible misunderstanding of the intended import of the word "partner" as used in the indictment would probably have been avoided, but he included in the definition the words "an associate," "a colleague; a companion."
It therefore may be rationally conjectured that the jury, having in mind the broad definition of the word "partner" given them by the trial judge, may have concluded that the denial of the defendant that he was "a colleague, a companion" of Bakofen was false, and that the defendant was at least "a colleague or a companion" of Bakofen. The well known circumstances surrounding the interrogation of the defendant before the grand jury and indeed his own disclosures dispel the notion that the defendant was indicted for falsely testifying that he was not "a colleague, a companion" of Bakofen.
Of the remaining points assigned for reversal there is one which allures us to make some further specific comment. There were 25 requests to charge presented to the court on behalf of the defendant, among which is No. 16 of the following phraseology:
"16. The jury should scrutinize carefully the testimony of the self-confessed accomplice and bear in mind any possible interest he may take in the outcome of the litigation either by way of fear or hope of gain, and in either deliberation, to carefully analyze his testimony to determine whether or not his testimony has been influenced by fear or hope of gain."
Obviously, it was sought to have this instruction upon its deliverance by the court applied by the jury to their consideration of the incriminating testimony of the witness *12 Bakofen. The request, we believe, possessed some reasonable application in this respect. State v. Rombolo, 91 N.J.L. 560 (E. & A. 1918). The learned trial judge did not doubt the pertinency and propriety of the request but in dealing with the several requests, remarked: "The sixteenth, I have covered." The requested instruction was not imparted by the judge to the jury verbatim et literatim. He evidently entertained the impression that an adequate interpretation of the significance of the request had been embodied in the charge as delivered. We quote the portion indicated:
"In determining the credibility of the testimony of a witness, you may take into consideration the attitude and demeanor of the witness on the witness stand. You may take into consideration the motive that a witness may have for telling an untruth. You may take into consideration the interest that a witness may have in the verdict that you render and how that interest might affect his testimony. You may take into consideration the witness' means of knowing the facts about which he testifies. You have a right to consider his biases, his prejudices; together with any other matters that may have a bearing on the veracity of the witness.
Bear in mind that we are dealing with the veracity of the witness, and not his character generally. So, in determining the honesty or veracity of a witness, you should only consider that evidence which may bear upon his testimony.
Each witness is under oath to tell the truth, and the law presumes that he is telling the truth. If he testifies falsely, the witness himself is guilty of perjury.
Now, Members of the Jury, you have to decide the credibility of the testimony of each witness and take into consideration whatever evidence might bear upon that credibility.
If you find that a witness has intentionally  by that I mean wilfully  testified falsely as to a material fact, you should consider that in determining the credibility of the rest of his testimony. You may, in view of all of the circumstances and the peculiarities of the case, deem it unwise to rely on any part of the testimony of a witness whom you find has deliberately sworn falsely on any material matter. You may believe that part of his testimony which you think relates to the true facts, and disregard that part which you think is false. It is for you to decide how much of the testimony of any witness you will rely upon in arriving at your verdict.
In weighing the evidence, you should also consider the probability and the improbability of the testimony of the witness  that is, of the facts about which he is testifying. If you find any testimony is inherently improbable under all of the circumstances of the case, you may reject it.
*13 Jurors are not bound to believe the testimony of any witness in whole or in part, but they may reject what they, in their conscientious judgment, feel ought to be rejected, and accept that which they believe credible."
We would ordinarily discount the merit of this specification of reversible error in recognition of the decisions in State v. Hyer, 39 N.J.L. 598 (Sup. Ct. 1877); State v. Bove, 98 N.J.L. 350 (Sup. Ct. 1922), affirmed 98 N.J.L. 576 (E. & A. 1923), and follow the decision of another part of this Division rendered in State v. Spruill, 28 N.J. Super. 381 (App. Div. 1953), were it not for the decision recently filed on June 28, 1954 by the Supreme Court in a certified appeal from the judgment of conviction in the last mentioned case. 16 N.J. 73. The Supreme Court resolved that the failure of the trial judge specifically to charge a request of similar import in the circumstances of that case constituted reversible error.
The circumstances in the Spruill case and those in the present are so characteristically and essentially approximative that it would seem adventurous to exile the determination of the present appeal from the latitude of the rationale of the majority opinion in that case.
Here as there the witness was not an accomplice in the particular crime for the commission of which the defendant was on trial. Here as there the witness was in particeps criminis with the defendant in the field of the unlawful undertaking out of which the indictment of the defendant for false swearing arose. In both, the court failed specifically to charge the request. A similar objection was interposed in both cases. Here the witness for the State was awaiting sentence, and we perceive that his testimony and his explanation of the exhibits were of supreme importance and probably constituted the predominant cause of the defendant's conviction. Assuredly the credence of his testimony was of pivotal importance.
So here the instructions delivered by the court were comprehensive and applicable to the consideration of the credibility of the testimony of witnesses generally, but nowhere in the charge were the jurors definitely instructed that in carefully *14 scrutinizing the testimony of a witness occupying the situation of an accomplice they should "bear in mind any interest" the witness "may take in the outcome of the litigation either by way of fear or hope of gain," or "to determine whether or not his testimony has been influenced by fear or hope of gain." The correspondence in essence between the excerpt from the charge in the present case and the pertinent component of the charge of the court in the Spruill case is palpable.
In the Spruill case the Supreme Court stated, "The instructions given did not cover the specific point * * *." "* * * we are clear that there cannot be an arbitrary refusal to instruct the jury in specific terms that the evidence of an accomplice is to be carefully scrutinized and assessed in the context of his special interest in the proceeding * * *" and "it is of the essence of a fair trial that the significance of such testimony be made known to the jury for an understanding discharge of their function to assess the evidence."
Quite incidentally we may remark that a vigilant and circumspect observation of the present case generates the impression that the defendant was indicted not because he failed to tell the truth but because he refused to tell enough of it believed to be within his personal knowledge. This indictment, we surmise, was intended to supply the desirable coercive pressure.
Our investigation of the entire record of the proceedings embracing particularly the unelucidated use of the word "partner" in the first count of the indictment, the breadth of the definition ascribed to the word "partner" by the court in the circumstances of the case, the failure of the court specifically to charge the defendant's sixteenth request, and the unaccountable discriminative nature of the verdict collectively guide us to the conclusion that the judgment of conviction grounded solely upon the first count of the indictment should be reversed.
Mandate accordingly.